### VAN VALKENBURGH *v.* THOMASVILLE, T. & G. R. CO.

(*Supreme Court, General Term, Third Department.* March 16, 1889.)

1. CORPORATIONS—CONTRACTS FOR BENEFIT OF OFFICERS.
     Where plaintiff is employed by the president of a railroad company owning a franchise, but whose road is not yet built, to procure some person to build the road on terms profitable to the president, and finally an agreement is made by which the franchises of the road are to be turned over to one L., who is to advance the money and build the road, taking one-half the profits for himself, the balance to be divided between the plaintiff and the president of the road, plaintiff cannot recover from the railroad company for his services in obtaining the contract.

2. SAME—RATIFICATION BY DIRECTORS.
     In such case, it makes no difference whether the directors of the company knew and approved the contract or not; the company was not bound by it, and could repudiate it as a diversion of profits, which it was the duty of its agents to abstain from appropriating to themselves.

3. SAME—INTERPRETATION.
     A statement by the president of defendant corporation, on being asked by plaintiff for $5,000 for services in the matter, "If that is your lowest figure I will see that the company will pay you," is not an agreement by the company to pay that sum.

Appeal from special term, Albany county.

Suit by John W Van Valkenburgh against the Thomasville, Tallahassee & Gulf Railroad, to recover for services alleged to have been rendered the company under a contract with John E. Page, acting president. From a judgment for plaintiff, entered on report of a referee, defendant appeals.

Argued before LEARNED, P. J., and INGALLS and LANDON, JJ.

*Bangs, Stetson, Tracy & MacVeagh,* for appellant. *S. A. Rockfellow* and *H. G. Wood,* for respondent.

LANDON, J.   Assuming without deciding that Mr. John E. Page had full authority to bind the defendant, the defendant is only bound to the extent that Page exercised his authority in his dealings with the plaintiff.   Page entered into negotiations with the plaintiff, to the end that the plaintiff should induce some party of means and enterprise to build the defendant's railroad in the state of Florida, upon such terms as would be profitable to Page himself.   The inducement held out to the plaintiff was that Page would divide his profits with him.   This was in February, 1884.   The defendant then had no railroad, but had a franchise authorizing him to build one.   After some preliminary conversation and correspondence between Page and the plaintiff, the plaintiff by letter of date March 18, 1884, suggested that one Lee was the proper person to take hold of the enterprise.   To this Page responded by letter of date March 24, 1884, in which the contracts subsequently made were outlined.   Lee, Page, and the plaintiff soon came together.   Page procured from the defendant authority "to close a contract or contracts with J. W. Van Valkenburgh, Esq., and associates, or others, for the transfer and assignment of all the property, titles,.and interests of any and every kind and nature * * * to said J. W. Van Valkenburgh, Esq., and associates, or others," of the defendant.   Then on the 7th of June, 1884, as the referee finds, "Page, assuming to act for and in the name of the defendant, made and executed to the plaintiff and one George C. Lee a transfer in writing and under seal of all the assets, property, and interests of the defendant."   On the same day, and as a part of the same transaction, the plaintiff, Page, and Lee entered into an agreement under seal, whereby it was agreed that Lee should advance all the money to carry out the said contract with the defendant, and build the road, and that the profits should be divided between the three parties; Lee taking one-half, and Page and the plaintiff each one-fourth.   In these agreements Page acted on one hand for himself; on the other, ostensibly for the defendant.   He sold half the defendant's property to plaintiff, and then plaintiff transferred to Page an equal interest in the profits to accrue from the enterprise.   Thus the proposal of March 24, 1884, and plaintiff's subsequent labors, ripened and were merged in this contract.   The contract shows that the plaintiff was to receive his pay out of the property of the defendant transferred to him and Lee, and out of the profits Lee's enterprise and money seemed to promise.   Still assuming that Page had the right to hire the plaintiff in the name of the defendant to render services in disposing of its franchise and property, the defendant is not liable for any of the services which resulted in these contracts.   Employed to sell defendant's property, he became one of its purchasers, and the partner in a contemporaneous agreement for a division of his prospective profits with the defendant's agent, through whom the contract of sale was made.   The referee finds "that the plaintiff's connection with such agreements [meaning the agreement of sale and another like agreement, respecting a connecting railroad, not necessary here to be mentioned] was a part of the service that he was performing for the defendant corporation under and by virtue of his employment by the said John E. Page in February, 1884."   The plaintiff did what Page employed him to do, and upon Page's promise to share his profits with him.   The facts disclose very clearly the nature of the employment, and the measure and source of plaintiff's promised compensation.   The referee's finding that such employment was for the corporation cannot be sustained.   Whatever services the plaintiff rendered, and expenses he incurred, were rendered and incurred either to secure these contracts or under them.   Whether all the directors of the defendant knew that the plaintiff was thus employed, and the character of his services, and expressed their satisfaction with them, we need not inquire.   The defendant itself was not legally bound, and when able by other agents to assert its repudiation of the agreement is at liberty to do so against the parties to them.   The court will not aid in enforcing such agreements.   This proposition needs no discussion

and no citation of authority. It may be that the scheme promised benefits to the defendant, but it is obvious that it contemplated a diversion from it of benefits which it was the duty of its agents to abstain from appropriating to themselves. The finding of the referee that the defendant, through Page, settled with the plaintiff for his services at $5,000, is not justified by the evidence. Page did not assume that he already had defendant's authority to make any settlement. He expressly stated: "If that is your lowest figure, I will see that the company will pay you." This was a promise, not a performance, and cannot uphold a finding of performance. The evidence on the part of the defendant tends to show that plaintiff's claim was against Page, and not the defendant. We do not think it necessary to consider it, as upon the plaintiff's case the recovery cannot be sustained. Judgment reversed; referee discharged; new trial granted; costs to abide the event. All concur.